ECLIPSE MANUF'G Co. v. ADKINS et al.

(Circuit Court, N. D. Illinois. July 31, 1890.)

1. PATENTS FOR INVENTIONS—DESIGN FOR MANUFACTURE.
    The idea of ornamenting the upper or lower portion of the pipes of a radiator to a uniform height so that it will present ornamental and plain parallelograms in contrast, is patentable as a "new and original design for a manufacture" under Rev. St. U. S. § 4929.

2. SAME—EVIDENCE OF INVENTION.
    The patentee is not shown not to have been the inventor of the design by the fact that his draughtsman made a drawing of the radiator pipes, showing their form and size, and an architect drew the figures for the particular ornamentation adopted in the radiators manufactured and put on the market by the patentee.

Dyrenforth & Dyrenforth, for complainant.
E. S. Bottum, for defendants.

BLODGETT, J. This is a bill in equity, charging defendants with the infringement of design letters patent No. 17,270, granted April 19, 1887, to Leon H. Prentice for a design for a radiator. The scope of the patent is described by the patentee in his specifications as follows:

"The leading feature of my design consists in the upright or vertical pipes of the radiator, having a comparatively plain or even surface for a portion of their length from the bottom up, and with an ornamented surface consisting, preferably, of embossed or depressed ornamentation at the top or upper part, the plain portion constituting the lower or base portion of the radiator, and the figured or ornamented portion constituting the top or crown of the same, the plain and figured portions offsetting each other, and presenting a contrasting appearance between the upper and lower parts of the radiator. These portions of the surface give the radiator a pleasing appearance. * * * The invention consists in the radiator, composed of a series of vertical pipes or loops of uniform height, having the crown or top portion of the pipes or loops ornamented or figured a uniform distance from the top downward, the portion below being comparatively plain. In this manner the ornamented and plain portions of the aggregate surface of the radiator constitute two rectangular parallelograms, one above the other. A similar effect would be produced by transposing the plain and figured portions. What I claim is the design for a radiator herein shown, consisting of a series of upright pipes or loops of uniform height, having the upper and lower portions of their aggregate surface distinguished from each other by ornamentation, so as to present rectangular figures, A, B, in contrast."

The defenses set up are:

"(1) That Prentice was not the original inventor of the design covered by the patent; (2) that defendants do not infringe; (3) that the patent is void, as not being within the provisions of the statute which authorizes the granting of design patents."

It will be seen that this patent is not for any specific form of ornamentation. It does not describe what the ornamentation shall consist of further than to say in the specifications that the patentee prefers "embossed or depressed ornamentation," but what kind of ornamentation it shall be, whether a Greek pattern of lines, or a leaf, or vine, or scroll, or any other embossed or sunken figures, is not indicated. The sole

scope of the patent is the idea of ornamenting the upper or lower portion of the pipes of a radiator to a uniform height, so that it will present ornamented and plain parallelograms, in contrast. As to the claim that Prentice was not the first to conceive the idea of thus ornamenting a radiator, there is no proof on the part of the defendant which shows that any person had preceded him in this field. The proof upon which the defendant relies in support of this part of the defense is that one Dixon, who was a draughtsman or designer for Prentice, was the originator of the design, and that a Mr. Root, who was an architect in the city of Chicago at the time, made the design for the particular figures which were adopted by Prentice as his ornament. I have no doubt, from the proof, that Mr. Dixon made a draft of the radiator pipes, showing their form and size, and that after he had so done, Mr. Prentice informed or directed Mr. Root, as to the locality of the ornamentation which he proposed to put upon the radiator; and that Mr. Root drew the figures for the particular ornamentation which Mr. Prentice adopted in the radiators which he manufactured and put upon the market. But it will be noticed that Mr. Prentice does not claim to have been the inventor of the radiator or the radiator pipes. He simply claims his patent for the idea of ornamenting a portion of the pipes, instead of leaving them entirely with plain surfaces, and for putting this ornamentation of uniform height on each pipe, so that the radiator would show an ornamented parallelogram and a plain parallelogram, in contrast. The drawing of the pattern, or figure, from which the pipe itself was to be cast, showing its shape and general form, is not what is covered by the patent, and this may have been the invention or product of Dixon's mind. So too, the particular style of scroll work which Mr. Prentice adopted for radiators, which he was himself to manufacture, under his patent does not imply that Root was the originator of the idea of ornamenting a radiator in parallelograms. as is shown and claimed by the patent.

This class of patents is allowed by section 4929, Rev. St., which provides:

"Any person who, by his own industry, genius, efforts, and expense, has invented and produced any new and original design for a manufacture, bust, statute, alto-relievo, or bas-relief; any new and original design for the printing of woolen, silk, cotton, or other fabrics; any new and original impression, ornament. patent (pattern) print, or picture to be printed, painted, cast, or otherwise placed on or worked into any article of manufacture; or any new, useful, and original shape or configuration of any article of manufacture, the same not having been known or used by others before his invention or production thereof, or patented or described in any printed publication,—may, upon payment of the fee prescribed, and other due proceedings had, the same as in cases of inventions or discoveries, obtain a patent therefor."

I am of opinion that the design covered by this patent comes within the first clause of this section as a "manufacture," rather than within the third clause as an "original impression, ornament," etc., as is insisted by the complainant's counsel. The second clause requires, as I think, that there should be a description of the design which is to be "printed, painted, cast, or otherwise placed on or worked into any article of manufacture."

For illustration, a chair is an old article of household furniture of which many forms are found and known, but if a person has invented or originated a new mode of ornamenting a chair by placing ornamentation of any kind upon a certain portion of the article, so that the ornamented portion will stand in contrast to the unornamented portion, it seems to me that it comes within the provision for a "design for a manufacture;" that is, a manufacture of radiators which shall be ornamented in a special way by ornamentation upon a portion thereof.    In this connection, I think the following paragraph from a recent decision of Judge COXE in *Untermeyer* v. *Freund*, 37 Fed. Rep. 342, is pertinent:

"A design requires invention; but a different set of faculties are brought into action from those required to produce a new process or a new machine. In each case there must be novelty; but the design need not be useful in the popular sense. It must be beautiful. It must appeal to the eye. The distinction is a metaphysical one and difficult to put into words. A graceful pattern for the handle of a spoon or fork may attract many purchasers, and yet it cannot be said that the embodiment of these designs requires an exercise of the 'intuitive faculty of the mind' in the sense that this faculty is exercised in inventions like the telephone or the safety-lamp. The policy which protects a design is akin to that which protects the works of an artist, a sculptor, or a photographer, by copyright. It requires but little invention, in the sense above referred to, to paint a pleasing picture, and yet the picture is protected because it presents the personal characteristics of the artist, and because it is his. So with a design. If it presents a different impression upon the eye from anything which precedes it; if it proves to be pleasing, attractive, and popular; if it creates a demand for the goods of its originator, even though it be simple and does not show a wide departure from other designs, its use will be protected."

This being my view of the scope and intention of the statute under which the patent was granted, I am of opinion that the patent should be upheld, and there can be no doubt, from an inspection of the defendants' radiators, which are introduced in evidence, that the defendants infringe the patent by ornamenting their radiators for a uniform distance from the top downward, so as to show an ornamented rectangular parallelogram, and an unornamented rectangular parallelogram, one above the other.    A decree may be entered finding that defendants infringe, and directing an accounting of profits and damages, and a perpetual injunction against further infringement.